IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERICKA WAYS, | * | |
| Plaintiff, | * | |
| | | Case No. TJS-25-69 |
| v. | * | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | * | |
| | * | |
| Defendant. | | |
| * * * * * * | | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion for Summary Judgment ("Motion").[1] ECF No. 26. Having considered the submissions of the parties (ECF Nos. 26, 27, 28 & 30), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I.    INTRODUCTION

### A.    Factual Background

Unless otherwise noted, the following facts are not in dispute. To the extent any facts are in dispute, they will be considered in the light most favorable to Plaintiff Ericka Ways, the non-moving party. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).

This lawsuit arises from the alleged wrongful termination of Plaintiff, who is a person with type 1 diabetes. ECF No. 27. From May 2023 to May 2024, Plaintiff was employed by WMATA

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF Nos. 17 & 18.

as a Curriculum Development Specialist. ECF No. 26. She was responsible for overseeing all curriculum related to the training of bus operators. *Id*. Plaintiff was directly supervised by Jeffery Duarte ("Duarte"), who was supervised by Elmer Coppage ("Coppage"). *Id.* Plaintiff claims that she experienced sexual harassment through quid pro quo demands and the creation of a hostile work environment, and that she was discriminated against based on her disability. ECF No. 27. Plaintiff contends that she was wrongfully terminated "[a]s a culmination of the harassment and discrimination[.]" *Id.* at 1-2.

According to Plaintiff, Duarte told her that if she wanted to obtain workplace privileges, like remote work and the implementation of her workplace ideas, then she should smile more, be nicer, and pay more attention to Coppage (Duarte's supervisor). ECF No. 27. She does not recall the number of times Duarte made comments to her or when exactly these interactions occurred. ECF No. 26-2 at 9-12. Plaintiff's sexual harassment claims are based solely on these comments. Plaintiff claims that when she refused to comply with Duarte's requests that she improve her demeanor and give more attention to Coppage, she was terminated. ECF No. 27. Defendant generally disputes Plaintiff's account of the alleged conduct but concedes that Duarte made comments to Plaintiff about her demeanor and attitude at work. ECF No. 26. Defendant attempts to contextualize Duarte's comments, arguing that they were justified, unrelated to her sex, and insufficient to constitute sexual harassment. *Id*.

Defendant contends that in October 2023, Plaintiff began displaying a negative demeanor at work and frequently appeared angry and irritated. *Id*. Plaintiff does not dispute Defendant's characterization but maintains that any unusual behavior she exhibited was caused by her disability. ECF No. 27 at 6-7 (explaining that her poor behavior was caused by low blood sugar). Plaintiff displayed this behavior in conversations with other staff members, including interactions

with her supervisors, Duarte and Coppage. ECF No. 26. For example, Defendant explains that Plaintiff angrily accused Coppage of lying about Defendant's remote work policy, and on a separate occasion, she ignored Coppage's directive not to distribute an employee satisfaction survey to the office. *Id.* Duarte testified that, on at least one occasion, Plaintiff approached him seeking advice on how to increase support for her ideas at work. ECF No. 26-3 at 9. He suggested she improve her demeanor and working relationships with coworkers, and explained that people were not motivated to support her because she came across as negative. *Id.* Defendant argues that in this context, Duarte's comments cannot constitute sexual harassment.

Plaintiff also claims she was terminated because of her disability. ECF No. 27. She argues that she met Defendant's employment expectations throughout her tenure. *Id.* However, she admits that when her blood sugar is low, she experiences episodes of "confusion, dizziness, weakness, and unusual behavior." *Id.* at 7. She attributes her poor attitude at work to these episodes of low blood sugar, and therefore to her disability. *Id.* Plaintiff argues that by citing her poor attitude as a reason for her termination, Defendant has provided "an implied admission . . . that Plaintiff's disability was the reason" that she was fired. *Id.*

Defendant contends that Plaintiff was terminated for her poor job performance *and* demeanor. ECF No. 26. Defendant cites Plaintiff's mid-year employment evaluation[2] (ECF No. 26-5) that documented Plaintiff's missed deadlines and incorrect work, and encouraged her to improve her communication skills, professional boundary setting, and time management. According to Defendant, these areas of poor job performance remained unimproved and ultimately led to Plaintiff's termination in May 2024. ECF No. 26. Specifically, Plaintiff's discharge review

---

[2] The mid-year evaluation appears to have been completed by WMATA on or around October 27, 2023.

(ECF No. 26-6) and termination memo (ECF No. 26-7) state that she failed to progress as expected and cite multiple examples of her performance issues, including: delayed completion of important projects; failure to effectively lead where expected; questionable professional behavior, attitude, and boundaries; inability to multitask and consistently meet deadlines; inaccurate work product; and working from unapproved locations. Plaintiff does not acknowledge or provide any evidence to rebut these performance issues. Instead, she generally asserts that there is no evidence of her poor job performance and cites her mid-year evaluation, which rated her as "On-Target" in each area assessed, despite the concerns outlined throughout the evaluation. ECF Nos. 27 & 26-5.

### B.      Procedural History

Plaintiff brought this action on January 9, 2025. ECF No. 1. Discovery was completed on August 18, 2025. ECF Nos. 21 & 22. Defendant filed its Motion on October 2, 2025, and the response and reply were filed thereafter. ECF Nos. 26, 27 & 28. In its reply, Defendant argues for the first time that Plaintiff's hostile work environment claim should be dismissed. ECF No. 28. On December 18, 2025, the Court filed a letter order granting leave for Plaintiff to file a surreply responding to this new argument. ECF No. 29. On December 22, 2025, Plaintiff filed a surreply. ECF No. 30. Defendant's Motion is now ripe for decision.

## II.      LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be

denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## III.   DISCUSSION

### A.   Sexual Harassment Under Title VII

"Title VII makes it illegal for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 411 (D. Md. 2015) (citing 42 U.S.C. § 2000e-2(a)). Courts view sexual harassment as a form of prohibited sex discrimination. *Id*. "Actionable workplace sexual harassment claims come in two forms: (1) claims of hostile work environment due to severe or pervasive sexual harassment and (2) claims of quid pro quo sexual harassment." *Id*. Both require an element the other does not. While quid pro quo harassment requires proof that a tangible employment action resulted from a plaintiff's refusal to submit to a supervisor's sexual demands, a hostile work environment claim

requires proof that the conduct was "severe or pervasive." *Moser v. MCC Outdoor, L.L.C.*, 256 F. App'x 634, 642 (4th Cir. 2007).

### 1.      Quid Pro Quo Sexual Harassment

Defendant argues that Plaintiff's quid pro quo claim fails because Duarte never made a sexual advance toward her. ECF No. 26. Instead, the comments she alleges to be quid pro quo sexual harassment were merely a request that she improve her demeanor at work. *Id.* According to Defendant, these comments were completely unrelated to her sex. *Id.* Plaintiff contends that Duarte's comments about smiling more, being nicer, and paying more attention to her supervisors are quid pro quo sexual harassment because he implied that Plaintiff would not receive workplace benefits unless she conformed to Duarte's view of how women should behave toward their male supervisors. ECF No. 27. Plaintiff argues that when she refused to comply, she was terminated. *Id.*

### a.      Law of Quid Pro Quo Sexual Harassment

"Title VII recognizes quid pro quo harassment as a circumstance 'where sexual consideration is demanded in exchange for job benefits.'" *Cooper v. Balt. Gas & Elec. Co.*, No. JRR-23-3116, 2024 U.S. Dist. LEXIS 146349, at *29 (D. Md. Aug. 16, 2024) (citation omitted). "This occurs 'when a superior tangibly punishes an employee for rebuffing his or her sexual advances or tangibly rewards an employee for submitting (unwillingly) to them.'" *Id.* To prove quid pro quo harassment, an employee must establish the following elements:

1. The employee belongs to a protected group.
2. The employee was subject to unwelcome sexual harassment.
3. The harassment complained of was based on sex.
4. The employee's reaction to the harassment affected *tangible aspects* of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise

> qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
>
> 5. The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment and took no effective remedial action.

*Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011) (emphasis in original) (citation omitted).

Determining whether conduct is "unwelcome sexual harassment" is a two-step inquiry. Courts first consider whether the conduct was unwelcome by examining the plaintiff's response to the alleged advances and discerning whether the plaintiff regarded the conduct as "undesirable or offensive," and whether the plaintiff solicited or incited the advances. *Briggs v. Waters*, 484 F. Supp. 2d 466, 478 (E.D. Va. 2007) (considering plaintiff's efforts to avoid defendant, her failure to respond to his emails, and her physical recoiling from his hugs as evidence that defendant's advances were unwelcome).

If the court finds the conduct was unwelcome, it then addresses whether the conduct constitutes a sexual advance. *Id.* "To establish the existence of a sexual advance, a plaintiff need not show that an explicit request for sex was made[,]" as a sexual advance may be established through words or actions implying as much. *See id.*; *see also Francis v. Bd. of Sch. Comm'rs*, 32 F. Supp. 2d 316, 322 (D. Md. 1999) ("[Q]uid pro quo sexual harassment includes an employer's 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical *conduct of a sexual nature*[.]'") (emphasis added) (quoting 29 C.F.R. § 1604.11(a)).

If a plaintiff makes a prima facie showing of quid pro quo harassment, "the burden shifts to the employer to articulate a legitimate, [non-discriminatory] reason for the adverse action." *Okoli*, 648 F.3d at 222-23 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006)). "[I]f the employer satisfies its burden, the burden returns to the plaintiff to establish that the employer's proffered reason is a pretext for discrimination." *Id.*

####     b.    Analysis

Plaintiff's prima facie case of quid pro quo harassment fails on the second and third elements, as there is no evidence of unwanted sexual harassment based on Plaintiff's sex. Plaintiff provides no evidence that she treated Duarte's comments as unwanted. There is no evidence Plaintiff complained of the statements, reported the comments, or even discussed her concerns with Duarte. At most, she simply ignored his requests. There is nothing in the record indicating that his comments were unwanted. In fact, on at least one occasion Plaintiff went to Duarte herself and questioned why Coppage was not supporting her ideas at work. ECF No. 26-3 at 9. After Plaintiff initiated this conversation, Duarte responded that she exhibited a negative demeanor and should be more pleasant if she wanted support for her ideas. *Id.* The record does not reflect, nor has Plaintiff asserted, that Duarte's comments were unwanted.

Even so, these comments do not constitute a sexual advance. A sexual advance encompasses comments, requests, and actions that are sexual in nature. *See, e.g.*, *Okoli*, 648 F.3d at 217-18 (involving sexual propositions to fulfill a "sexual fantasy," comments about plaintiff's undergarments, and forcible touching and kissing); *Nixon v. Kysela Pere et Fils, Ltd.*, No. 22-1406, 2024 U.S. App. LEXIS 19621, at *2 (4th Cir. Aug. 6, 2024) (involving a workplace relationship); *Williams*, 86 F. Supp. 3d at 405 (involving sexually suggestive comments, inappropriate touching, and stalker-like behavior). Mere comments that Plaintiff improve her demeanor, smile more, be more pleasant, and even that she give more attention to her supervisor are not sexual in nature. This is especially true here, where the evidence undisputedly reflects Plaintiff's ongoing behavioral issues and attenuated working relationships with her supervisors and other staff members—issues that Plaintiff herself concedes but attributes to her disability rather than to willful

8

misconduct. Duarte's comments do not constitute a sexual advance, and Plaintiff has therefore failed to establish unwelcome sexual harassment.

In addition, Plaintiff fails to provide any details relating to her interactions with Duarte that could support her quid pro quo claim. Plaintiff testified she could not recall the dates the comments were made, could not "give an exact number" of times the behavior occurred, could not even provide a "ballpark number" as to the issue, and frequently answered that she did not know or could not remember other important details relating to her allegations. ECF No. 26-2 at 9-12. There is also no evidence that Duarte referenced Plaintiff's sex throughout any of his interactions with her, or that his comments were otherwise related to her sex. To be sure, when asked, "what is it about Mr. Duarte telling you that you should smile more that you believe is quid pro quo sexual harassment[,]" Plaintiff responded "I cannot answer that question. I don't know . . . I can't recollect right now." ECF No. 26-2 at 11. Plaintiff's vague and conclusory factual statements about Duarte's comments do not establish unwanted sexual harassment based on her sex. *See, e.g.*, *Taylor v. Univ. of Md.*, No. AW-11-3008, 2012 U.S. Dist. LEXIS 91375, at *6 (D. Md. Jul. 2, 2012) (declining to reconsider dismissal of plaintiff's quid pro quo sexual harassment claim because the "factual allegations regarding the sexual harassment [were] vague, conclusory, and devoid of any reference to actual events"). Because Plaintiff has not established a prima facie case of quid pro quo sexual harassment, Defendant is entitled to summary judgment. The Motion is granted as to this claim.

### 2.    Hostile Work Environment Based on Sex

Defendant contends that Plaintiff also fails to establish a prima facie case of hostile work environment because Duarte's comments were not based on Plaintiff's sex, and, even if the comments were unwelcome, there was no severe or pervasive conduct that altered her

employment. ECF No. 28. Plaintiff argues Duarte's comments were severe, pervasive, and based on sex because they related to how women should act and behave in the workplace. ECF No. 30.

### a.    Law of Hostile Work Environment Based on Sex

To demonstrate a hostile work environment, a plaintiff must establish the following: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli*, 648 F.3d at 220 (alteration in original) (internal quotation marks omitted) (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010)).

To determine whether conduct is severe or pervasive, courts consider whether it created an objectively abusive or hostile work environment, and whether a plaintiff subjectively perceived the work environment to be abusive. *See Nixon*, 2024 U.S. App. LEXIS 19621, at *10. Objective hostility is determined by considering the totality of the circumstances, including: (1) the frequency of discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, rather than merely an offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Okoli*, 648 F.3d at 220. "The Fourth Circuit has noted that 'plaintiffs must clear a high bar in order to satisfy the severe or pervasive test.' [] For instance, 'complaints premised on nothing more than rude treatment by [coworkers] . . . callous behavior by [one's] superiors . . . or a routine difference of opinion and personality conflict with [one's] supervisor' are not actionable." *Harris v. Leopold*, No. CCB-12-0829, 2013 U.S. Dist. LEXIS 38482, at *10 (D. Md. Mar. 18, 2013) (quoting *Equal Emp. Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008)).

b.    Analysis

Plaintiff's prima facie case of hostile work environment fails, and Defendant is entitled to summary judgment on this claim. First, there is no evidence that Duarte's comments were based on Plaintiff's sex. Plaintiff argues that Duarte's comments *implied* to her "that if she was to receive the benefits she sought . . . [she] would need to conform to the Defendant's views of how a woman should act and behave towards her male supervisors." ECF No. 30 at 4. But she fails to cite any evidence from which this could be implied or that otherwise indicates Duarte's comments were related to her sex. *See Hartsell v. Duplex Prods.*, 123 F.3d 766, 772 (4th Cir. 1997) (explaining that harassment is based on sex if "but-for" her sex, she would not have been the victim of discrimination).

The only evidence in the record bearing on sex comes from Duarte's deposition, where he states, "I probably said you shouldn't look like you're angry, because I [] say that to everybody when they . . . looking angry about something. Especially my superintendents, who are both male." ECF No. 26-3 at 9. This testimony is uncontested and establishes that Duarte made the same type of comments to Plaintiff as he did to her male counterparts. Plaintiff fails to prove that "but-for" her sex, Duarte would not have made comments about her demeanor or suggested she pay more attention to Coppage. *See Hartsell*, 123 F.3d at 772 ("An insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because the 'victim' of the remark happens to belong to a class protected by Title VII."). Even in the light most favorable to Plaintiff, Duarte's comments were gender neutral and driven by Plaintiff's poor attitude and behavioral issues at work, not her sex. Her hostile work environment claim fails for this reason.

Duarte's comments also were not severe or pervasive. Although Plaintiff may have subjectively perceived the work environment to be abusive, none of the relevant considerations for

11

determining objective hostility establish a severe or pervasive environment. First, Plaintiff cannot recall the frequency of Duarte's comments. ECF No. 26-2 at 9-12. Second, the only alleged conduct at issue pertains to comments about Plaintiff's demeanor at work and a suggestion that she pay more attention to her supervisor. ECF No. 27. These comments may be considered rude or demonstrate personality conflicts, but they do not meet the high bar of "severe or pervasive" conduct that Plaintiff has the burden to establish. *See Harris*, 2013 U.S. Dist. LEXIS 38482, at *10. Third, the alleged conduct is not physically threatening or humiliating, and at worst can be considered an offensive utterance. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015) (explaining a single offensive utterance, like simple teasing or an offhand comment, does not create a hostile work environment "without significant repetition or an escalation in the harassment's severity"). Fourth, Plaintiff does not allege that Duarte's comments unreasonably interfered with her work performance, nor does she provide any evidence to support such a finding. The record does not reflect an objectively hostile work environment, and the alleged conduct was not severe or pervasive.

Plaintiff's conclusory assertions, without any supporting evidence, that "Defendant's acts were sufficiently severe or pervasive[,]" that Duarte's comments "set the tone as to how Plaintiff's job was to be carried out and executed[,]" and that "[n]othing could be more pervasive than an unreasonable and outdated view of how a woman is to act and behave in her job simply because she is a woman" are insufficient to establish that the conduct was severe or pervasive. ECF No. 30 at 5; *Harris*, 2013 U.S. Dist. LEXIS 38482, at *10-11 (granting defendant's motion to dismiss when plaintiff alleged "vague examples of rude and inappropriate behavior," including male supervisors waiting for female employees to open doors for them, describing women in degrading terms, and making comments about female employees' attire). Accordingly, Plaintiff fails to

12

establish the existence of a hostile work environment. No reasonable juror could find otherwise, and the Motion is granted as to Plaintiff's sex-based hostile work environment claim.

### B.        Wrongful Termination Under the Rehabilitation Act

Defendant's primary justification for Plaintiff's termination is her poor job performance. Her performance issues were first recorded in a mid-year evaluation, and Defendant claims she failed to improve her performance thereafter. ECF No. 26. While acknowledging that Plaintiff was terminated in part for her poor attitude and unprofessional behavior, Defendant argues that this fact is insufficient to establish a claim under the Rehabilitation Act. *Id.* Plaintiff claims she was terminated solely because she has type 1 diabetes, which caused her to maintain a poor attitude during episodes of low blood sugar. ECF No. 27.

### 1.        The Rehabilitation Act

"Section 504 of the Rehabilitation Act provides that '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .'" *Moody v. Bd. of Educ. of Wicomico Cnty.*, No. SAG-25-00642, 2025 U.S. Dist. LEXIS 219446, at *24 (D. Md. Nov. 7, 2025) (quoting 29 U.S.C. § 794(a)). "For a claim of disability discrimination under the Rehabilitation Act, a plaintiff 'must show that (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of her disability.'" *Id.* at *25 (quoting *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019)); *see also Blackmon v. Spahn*, No. PX-22-1185, 2023 U.S. Dist. LEXIS 159220, at *22 (D. Md. Sept. 7, 2023) ("For a disability discrimination claim to survive summary judgment, a plaintiff must make a prima facie case that

she suffers from a disability, was qualified for her job, and suffered an adverse employment action 'solely because of [her] disability.'" (citation omitted)).

Disability discrimination under the Rehabilitation Act includes claims for wrongful termination based on an individual's disability. *See Moody*, 2025 U.S. Dist. LEXIS 219446, at *24-25. However, "the Rehabilitation Act 'does not require an employer to simply ignore an employee's blatant and persistent misconduct, even where that behavior is potentially tied to a medical condition.'" *Hannah P.*, 916 F.3d at 344 (quoting *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016)) (affirming the district court's grant of summary judgment as to plaintiff's Rehabilitation Act claim, even when her employer withheld an employment benefit due to attendance issues caused by her depression).

The *McDonnell Douglas* burden-shifting framework applies to discrimination claims brought pursuant to the Rehabilitation Act. *See Hannah P.*, 916 F.3d at 342. Under this framework, when a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant "to provide a legitimate, nondiscriminatory reason for its conduct." *Id.* If the defendant does so, then the plaintiff "'bears the ultimate burden of persuasion' and 'must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination.'" *Id.* (citing *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011)).

### 2.      Analysis

The Court will analyze Plaintiff's Rehabilitation Act claim under the *McDonnell Douglas* burden-shifting framework. As explained below, Plaintiff has established a prima facie case of discrimination and has submitted sufficient evidence that Defendant's proffered reason for her termination was a pretext for discrimination.

The first element of Plaintiff's prima facie case is that she is disabled. The parties do not dispute that Plaintiff is a type 1 diabetic and is thus disabled under the Rehabilitation Act. *See Ocampo v. Brennan*, No. CCB-19-2875, 2021 U.S. Dist. LEXIS 11763, at *8 (D. Md. Jan. 22, 2021) (explaining that the Rehabilitation Act adopts the definition of disability found in the Americans with Disabilities Amendments Act); 42 U.S.C. § 12102(1) (defining disability as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . (B) a record of such an impairment; or (C) being regarded as having such an impairment []."). "Because 'diabetes substantially limits endocrine function,' it is one of those impairments which will '[virtually] always' substantially limit a major life activity and for which 'the necessary individualized assessment should be particularly simple and straightforward.'" *Ocampo*, 2021 U.S. Dist. LEXIS 11763, at *8 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)-(iii)).

The second element of the prima facie case is that Plaintiff was otherwise qualified for her position. This element is in dispute. Although Plaintiff's mid-year evaluation highlighted several concerns with her work, it also rated her as "On-Target" for each performance area that was assessed. ECF No. 26-5. It is unclear why Plaintiff would be given a favorable rating if she was truly failing to meet WMATA's expectations. And Defendant has not produced evidence that explains the discrepancy between its critiques of Plaintiff's work and the overall ratings it provided in the mid-year evaluation. A reasonable jury could find that Plaintiff was meeting WMATA's expectations and was qualified for her position at all relevant times. Plaintiff has satisfied the second element of her prima facie case.

The third element of the prima facie case is the causal connection between Plaintiff's disability and the adverse action. Here, there is a material dispute as to whether Plaintiff's disability was the sole reason for her termination. Defendant cites Plaintiff's mid-year evaluation,

15

termination memo, and discharge review as evidence of the behavioral and performance issues that led to her termination. *See, e.g.*, ECF No. 26-6 at 1-2 (listing instances of Plaintiff's unprofessional behavior and attitude). But the mid-year evaluation contained several contradictions, as it rated Plaintiff as "On-Target" despite listing several issues with her work performance. ECF No. 26-5. And Plaintiff claims that on every occasion when Defendant accused her of exhibiting a poor attitude, she was also experiencing issues with her blood sugar levels, which caused her to exhibit behavioral symptoms. ECF No. 27 at 7. A reasonable jury could find that Defendant's performance-related justifications for Plaintiff's termination lack credibility, and that Plaintiff was terminated solely because of her disability. Viewing the evidence in the light most favorable to Plaintiff, she has established a prima facie case for wrongful termination under the Rehabilitation Act.

Because Plaintiff has established a prima facie case, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. *See Hannah P.*, 916 F.3d at 342. Defendant cites multiple issues with Plaintiff's work performance that led to her termination, including: her failure to meet project deadlines and multitask; her failure to lead as expected by an individual in her position; her failure to follow instructions; inaccuracies in her work; and working in unapproved locations. ECF Nos. 26-5, 26-6 & 26-7. These concerns are entirely unrelated to her behavioral and attitude issues. Defendant has met its burden to proffer a lawful reason for terminating Plaintiff.

Under the *McDonnell Douglas* framework, Plaintiff must show that Defendant's proffered justifications were a pretext for discrimination. Put another way, Plaintiff "may attempt to establish that [she] was the victim of intentional discrimination 'by showing that the employer's proffered

16

explanation is unworthy of credence.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

Plaintiff contends that Defendant decided to terminate her because of her disability and fabricated the issues raised in the termination memo in order to have a non-discriminatory justification for her termination. ECF No. 27 at 5-7. In support of this argument, Plaintiff cites a series of internal emails where WMATA employees discuss the importance of thorough documentation of Plaintiff's wrongdoing, and request that additional information be added to Plaintiff's termination documents. ECF Nos. 27-4 & 27-5. Neither party explains what these emails are, who the WMATA employees in the email chain are (besides Coppage and Duarte), or what role these individuals played in the termination process. The email exchange seemingly shows that a WMATA supervisor was unwilling to approve Plaintiff's termination until Duarte and Coppage amended her termination documents and clarified what they expected of Plaintiff, how and when Plaintiff failed to meet these expectations, how and when she was advised of her performance issues, and how she failed to progress in these areas. ECF Nos. 27-5 at 1. Although these emails do not prove that Defendant terminated Plaintiff because of her disability, they do bring into question whether Defendant had sufficient, non-discriminatory reasons for terminating Plaintiff prior to making its decision to terminate her. A reasonable jury could find that these emails demonstrate that Defendant's proffered reasons for Plaintiff's termination are a pretext for discrimination.

In addition, the Court notes the absence of any evidence of disciplinary actions taken against Plaintiff, including write-ups or other indisputable evidence of her poor performance. ECF No. 27. The only record of Plaintiff's performance issues, excluding the termination documents, is her mid-year evaluation. But despite the areas of concern listed in this evaluation, the document

also rates Plaintiff as "On-Target." ECF No. 26-5. Taken together, and in the light most favorable to the Plaintiff, this evidence casts doubt on Defendant's purported reasons for her termination. Because a reasonable jury could find that Defendant discriminated against Plaintiff because of her disability, the Court must deny the Motion as to the Rehabilitation Act claim.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 26) is **GRANTED in part and DENIED in part**. This case will be referred to another magistrate judge for a settlement conference. The parties shall file a joint status report within seven days of the conclusion of the settlement conference.

An accompanying Order follows.


March 19, 2026                                              /s/
Date                                            Timothy J. Sullivan
                                                Chief United States Magistrate Judge

18